1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARREN R. FORD,

                    Plaintiff,

          v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

                    Defendant.

CASE NO. C04-5862KLS

ORDER REMANDING THE
COMMISSIONER'S DECISION
TO DENY BENEFITS

          Plaintiff, Darren R. Ford, has brought this matter for judicial review of the denial of his application for disability insurance benefits.  The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13.  After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff currently is thirty-eight years old.[1] Tr. 25.  He has a tenth grade education and past work experience as a loader operator, logging forklift driver, woodcutter, and warehouseman. Tr. 17, 61, 66, 74.

Plaintiff filed his application for disability insurance benefits on August 5, 2002, alleging disability as of March 25, 2002, due to problems with his neck, back, shoulders, right hip, and left ankle, wrist and elbow. Tr. 52-54, 60.  His application was denied initially and on reconsideration. Tr. 25, 27, 29, 35.  He requested a hearing, which was held on March 15, 2004, before an administrative law judge ("ALJ"). Tr. 223.  At the hearing, plaintiff, represented by counsel, appeared and testified. Tr. 223-46.

On May 1, 2004, the ALJ issued a decision determining plaintiff to be not disabled, finding specifically in relevant part as follows:

> (1)  at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity;
>
> (2)  at step two, plaintiff had "severe" impairments consisting of a cervical strain, back disorder, bilateral shoulder problems, obesity, and a learning disorder;
>
> (3)  at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and
>
> (4)  at step four, plaintiff retained a residual functional capacity to perform a modified range of light work, which did not preclude him from performing his past relevant work.

Tr. 23-24.  Plaintiff's request for review was denied by the Appeals Council on October 20, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On December 17, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1).  Plaintiff argues that decision should be reversed and remanded to the Commissioner for an award of benefits because the ALJ erred in assessing his residual functional capacity and failed to comply with the requirements of 20 C.F.R. § 404.1520a.  While for the reasons set forth below the court agrees that the ALJ erred in assessing plaintiff's residual functional capacity, and thus in finding him not disabled, the appropriate remedy is to remand this matter for further administrative proceedings.

<u>DISCUSSION</u>

This court must uphold the Commissioner's determination that plaintiff is not disabled if the

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1  Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

2  support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

3  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson

4  v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a

5  scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975);

6  Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one

7  rational interpretation, the court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577,

8  579 (9th Cir. 1984).

9  I.      The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

10         To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step

11  sequential evaluation process. 20 C.F.R. § 404.1520.  If a disability determination "cannot be made on the

12  basis of medical factors alone," the ALJ must identify the claimant's "functional limitations and restrictions"

13  and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A

14  claimant's residual functional capacity assessment is used at step four to determine whether he or she can do

15  his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It thus

16  is what the claimant "can still do despite his or her limitations." Id.

17         A claimant's residual functional capacity is the maximum amount of work the claimant is able to

18  perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work

19  must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those

20  limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a

21  claimant's residual functional capacity, the ALJ also is required to discuss why his or her "symptom-related

22  functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or

23  other evidence." Id. at *7.

24         The ALJ assessed plaintiff with the following residual functional capacity:

25         [T]he claimant retains the residual functional capacity to perform light work.  He can
           occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand
26         and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour
           workday.  He is limited to occasional stooping, kneeling, crouching, crawling, climbing
27         ramps and stairs, and bilateral reaching in all directions (including overhead) with no
           climbing ladders, ropes, and scaffolds.  He has cognitive limitations affecting his ability
28         to read.

Tr. 22.  Plaintiff argues that in so assessing his residual functional capacity, the ALJ erred in evaluating the medical evidence in the record regarding his mental functional limitations.  The court agrees.

The record contains only one report from a psychologist or psychiatrist, Dr. Terilee Wingate, Ph.D., who evaluated plaintiff in mid-October 2003, diagnosing him with a cognitive disorder. Tr. 205.  She found plaintiff to be markedly (defined as a "[v]ery significant interference with basic work-related activities") limited in his ability to interact appropriately in public contacts, and moderately (defined as a "[s]ignificant interference with basic work-related activities") to markedly limited in his ability to understand, remember and follow complex instructions. Tr. 204, 206.  Dr. Wingate further found plaintiff to be moderately limited in his ability to: learn new tasks; exercise judgment and make decisions; respond appropriately to and tolerate the pressures and expectations of a normal work setting; control his physical or motor movements; and maintain appropriate behavior. Id.

Dr. Wingate also stated that plaintiff would be "easily distracted by a lot of noise" and people, and therefore would need "a quiet setting," with one to two co-workers. Tr. 206.  She further stated that he had "poor auditory memory," that he learned best with hands-on instruction, and that his attention decreased as tasks became complex. Tr. 207.  In addition, Dr. Wingate opined that mental health intervention was not likely to restore or substantially improve his ability to work for pay, because his cognitive functioning was "likely stable" and "unchanging." Id.  She estimated that the length of time plaintiff would be impaired to the extent indicated in her report to be "lifelong." Id.

The ALJ rejected Dr. Wingate's report for the following reasons:

> The limitations assessed at Exhibit 9F [Dr. Wingate's report] are discounted because they are not supported by the totality of the medical evidence of record.  The "check-the-box" DSHS form is not supported by any treatment records of [sic] basis for the opinions found therein.  Such an opinion is likely an accommodation opinion rather than [an] opinion on residual functional capacity and the ability to work.

Tr. 21.  The court finds these reasons to be invalid.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, therefore, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595,

601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

First, it is true that the Ninth Circuit has expressed preference for individualized medical opinions over "check-off" reports. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983).  Here, however, Dr.

Wingate performed her own evaluation of plaintiff, and included on the evaluation form she used clinical observations, psychological testing results and other diagnostic notes. Tr. 204-09. As such, the court does not find the evaluation form completed by Dr. Wingate to be the kind of check-off report that is disfavored in this circuit. Indeed, the court has on many occasions upheld the Commissioner's decisions based at least in part on the written evaluations set forth on such standardized forms.

The ALJ's statement that Dr. Wingate's opinion "is likely an accommodation opinion rather than [an] opinion on residual functional capacity and the ability to work," also constitutes an improper basis for rejecting the opinion of an examining psychologist. The purpose for which a medical report is obtained "does not provide a legitimate basis for rejecting" it. Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (examining physician's findings entitled to no less weight when examination is procured by claimant than when obtained by Commissioner).

The court also does not find that the totality of the medical evidence in the record fails to support Dr. Wingate's opinion. Indeed, the court finds that her opinion is the only opinion in the record regarding plaintiff's mental impairments. Defendant argues that none of plaintiff's treating or examining physicians noted he had any mental health problems. See Tr. 126-27, 129, 133, 139-40, 143-47, 162-63, 167-68, 177-79, 183-88, 190-93, 198-99, 201-02, 220-21. However, those physicians did not see plaintiff for the purpose of treating or evaluating any mental health problems. In addition, as a specialist in psychology, Dr. Wingate's opinion is given greater deference regarding plaintiff's mental health issues than those of his treating and examining physicians, none of whom are specialists in that area. See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(5)).

For the same reason, the fact that plaintiff's father did not expressly state that plaintiff suffered from any mental health impairments, hardly impugns the credibility of Dr. Wingate regarding her psychological evaluation. Further, while the record does not contain any treatment notes from the time during which he apparently participated in a sex offender treatment program (Tr. 208), the ALJ has the "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). Thus, although the claimant did not provide any such records, the ALJ also was aware from Dr. Wingate's report of their possible existence, and, as such, he had a responsibility to attempt to obtain them if he thought they would be useful. The record does not

1    indicate that he attempted to do so.

2           Finally, defendant argues the ALJ properly discounted at least some of the limitations found by Dr.

3    Wingate based in part on his finding that plaintiff was less then fully credible. See Tonapetyan, 242 F.3d at

4    1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in

5    discounting claimant's credibility); Morgan v. Commissioner of the Social Security Administration, 169 F.3d

6    595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her

7    symptoms and limitations may be disregarded where those complaints have been properly discounted).

8    However, objective clinical and laboratory data may consist of diagnoses and observations of professionals

9    trained in field of psychopathology. Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000); see also

10   Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting

11   diagnosis of depression is competent evidence).  The court thus does not find this to be a reasonable basis

12   for rejecting Dr. Wingate's opinion.

13   II.    Evaluation of Mental Impairments Under 20 C.F.R. § 404.1520a

14          Plaintiff argues both the Commissioner and the ALJ erred in failing to use the "special technique"

15   described in 20 C.F.R. § 404.1520a in evaluating plaintiff's mental impairments.  That regulation provides

16   that the Commissioner will "follow a special technique at each level in the administrative review process," to

17   determine "the severity of mental impairments." 20 C.F.R. § 404.1520a(a).  Under this technique, the

18   Commissioner first determines whether the claimant has a medically determinable impairment. 20 C.F.R. §

19   404.1520a(b)(1).  If the claimant does have such an impairment, then the Commissioner rates the "degree of

20   functional limitation" resulting from that impairment. 20 C.F.R. § 404.1520a(b)(2).

21          Rating the degree of functional limitation involves consideration of four functional areas: activities of

22   daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20

23   C.F.R. § 404.1520a(c).  If a claimant's degree of limitation in the first three areas is rated "none" or "mild"

24   and "none" in the fourth area, then the claimant's mental impairment generally is considered not severe,

25   unless evidence in the record otherwise indicates there is more than a minimal limitation in the claimant's

26   ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).  Next, if the impairment is found to be

27   severe, the Commissioner then determines if it meets or equals the criteria of any of the impairments listed in

28   20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520a(d)(2).  If it does not, the claimant's

     residual functional capacity then is assessed. 20 C.F.R. § 404.1520a(d)(3).

At the initial and reconsideration levels of the administrative review process, "a standard document" must be completed to record how the above technique was applied. 20 C.F.R. § 404.1520a(e).  At the ALJ hearing level, documentation of the technique is done in the decision itself. Id.  Here, plaintiff argues that the technique was not properly documented at any of these levels.  Although it is not clear whether or not this occurred at the initial and reconsideration levels, no such standard document appears in the record.  It also does not appear that the ALJ properly documented the technique in his decision.

Defendant asserts the ALJ did properly follow the above regulatory requirements, citing to portions of his decision where he discussed plaintiff's activities of daily living, social functioning and concentration. Tr. 19, 21.  This discussion, however, was cursory at best, and nowhere in his decision did the ALJ use the proper designations for rating the four required areas of mental functioning, as mandated by 20 C.F.R. § 404.1520a.  Therefore, it is not at all clear that the ALJ actually applied the above technique.  In any event, because this matter is being remanded to the Commissioner for further consideration of the limitations contained in Dr. Wingate's opinion, on remand, the Commissioner also shall ensure that the requirements of 20 C.F.R. § 404.1520a, where applicable, are applied properly.

III.   This Case Should Be Remanded for Further Administrative Proceedings

The court may remand a case "either for additional evidence and findings or to award benefits." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain as to plaintiff's mental functional limitations, residual functional capacity, and whether he is capable of performing his past relevant work, this matter shall be remanded to the Commissioner for further administrative proceedings.  If, on remand, the Commissioner determines that plaintiff is not able to return to his past relevant work, the Commissioner then also shall determine whether plaintiff is capable of performing other work existing in significant numbers in the national economy.

1

CONCLUSION

2       Based on the foregoing discussion, the court finds the ALJ improperly determined plaintiff was not

3 disabled.  The ALJ's decision therefore hereby is reversed and remanded to the Commissioner for further

4 administrative proceedings in accordance with the findings contained herein.

5       DATED this 8th day of November, 2005.

6

7

8                                                    Karen L. Strombom
                                                     United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 9